319-0063. People of the State of Illinois, Appalachia v. Nissan Blakes, appellant. Thank you. Good afternoon. Good afternoon. We'd like to apologize for keeping you waiting. We had a technical difficulty that we're still trying to resolve. Justice Lytton will be dropped into this argument when they're able to correct whatever it is that's going on. We do record these so that he will be able to hear the entire argument, even though he's not here. So, Ms. Sloan, would you like to start? Yes, of course. Again, good afternoon, Your Honors. My name is Adrienne Sloan. I'm here with the Office of the State Appellate Defender on behalf of Nissan Blakes. I'm going to focus on argument one, which is my sentencing argument, but I'm happy to answer any questions on my second argument, if there are any. Nissan Blakes was sentenced to 25 years in the Illinois Department of Corrections for aggravated battery, based on an offense that he committed when he was a 16-year-old child. Blakes specifically exhibited many of the mitigating factors related to youth that are required to be considered by the sentencing court and were codified by the legislature in the new youth sentencing statute of 2017. Despite this new statute's mandate, these factors were not meaningfully applied to Nissan's situation and resulted in a 25-year sentence, 19 years above the statutory minimum and plainly excessive in Nissan's case. Nissan Blakes was exactly the type of child the legislature sought to protect when enacting this new statute. He directly fits into not one, but several of the required mitigating factors. Most relevantly is factor three, which is his family home environment, including any history of abuse, neglect, or trauma. Nissan Blakes grew up in an extremely troubled home environment. His PSI notes that he was physically abused starting when he was a baby. His parents were absent from his life, with his mother not being a part of his life consistently until he was seven years old and both parents with criminal records and periodically incarcerated. Outside of the PSI, Nissan Blakes' family environment was on display at the pretrial hearings. Nissan's dad came to court and was extremely disrespectful, addressing the judge speaking profanities to the point that he was actually banned from further proceedings. Tellingly, at point, Nissan joined in, also using foul language to address the court. This shows us exactly what the statute is for. The legislature recognizes that someone who grew up with inappropriate role models might be likely, through less fault of their own, to behave inappropriately themselves. Nissan's upbringing and the role models in his family should have mitigated his sentence. Next is factor one, which is impetuosity and level of maturity, including any disability. Nissan suffered from ADHD, for which he was receiving medication, and oppositional defiant disorder, for which he was receiving therapy. Notably, Nissan was doing extremely well in therapy. The therapy notes in the PSI indicate that he was learning to form pro-social relationships and that he was extremely cooperative while receiving treatment. This goes to factor four, which is his rehabilitative potential. Neither his ADHD or oppositional defiant disorder were mentioned by the sentencing court. Next is factor two, which is whether Nissan was subject to any peer pressure or negative influences. I already talked about Nissan's dad, whom, in the PSI, he called his role model. But another thing that goes to his peer pressure is the fact that this crime was getting motivated. Based on the state's factual basis for the plea, he stated that someone made him go to the scene and that the impetus for the crime was that there was a gang bounty placed on the victim. Sir, what this shows us is that Nissan didn't just decide on his own to commit this crime, he was actually motivated by gaining peer pressure. And now, because his youth influences susceptibility to this peer pressure, under the statute, this should have been mitigated. Well, let me ask you, was he motivated? Did he say they made him go there, or that if he went there and popped this guy, he'd get six thousand dollars? So he stated in the factual basis of the plea, he stated that he went there because someone told him to go there. Now, the fact that the crime was motivated by money, it's still a mitigating circumstance because it's based on the gang peer pressure. The gang was pressuring him to commit the crime, whether it's for money or whether it was just a pure gang peer pressure situation. What's really interesting is that a new case just came out, People v. McKinley, dealing with this exact same statute, and it was held that a sentence was reduced when gang motivation for a crime was held to be specifically mitigating under factor two. And in that case, a peer had instructed the defendant to shoot the victim. So that's similar to this case where someone in the gang did tell Nisan to go to the scene. So again, this statute requires applying the factors to a child defendant circumstance, considering how the factors could have impacted on the commission of the crime. Nisan was abused, faced negative influences at home, had ADHD, oppositional defiant disorder, and this crime was motivated by peer pressure. For all of these reasons, he's less culpable for the crime. And despite the direct textbook application of the sentencing factors, the court actually said on the record that none or almost none applied. This is a misapplication of the sentencing statute and resulted in a grossly excessive sentence. The judge's statements at the hearing show that he did not meaningfully consider Nisan's use in fashioning his sentence, again, as the new statute requires. I talked briefly about a main issue with the hearing, which was when he was talking about the mitigating factors under the statute. He said, I don't find many, if any, that apply. Again, when several of the factors apply so directly, this shows either a misapplication of or a disregard for the statute. Other telling comments show that although the sentencing court did mention the sentencing factors, he wasn't meaningfully utilizing the statute. In one comment, he mentioned that the statute says that impetuosity, brain development, and peer pressure are mitigating, but then he goes on to argue, goes on to state, but arguably not to this extent. So what this tells us is that the sentencing court sees the factors, he knows that they exist, but he believes for some reason that they're not relevant anymore because of the seriousness of the crime. But under the statute, it's not about the severity of the crime. It's about the mitigating impact that youth and its attendant characteristics had on his committing the crime, whatever the crime was. And notably, this sentence, excuse me, this statute was codified based on cases like Miller v. Alabama, Roper v. Simmons, both very serious crimes, premeditated murders in Roper's case. And the courts in those cases still held that youth and its attendant circumstances should be mitigating and taken into account at sentencing. Another of the judge's problematic comments was his statement that Nisan is arguably better than a hardened 35-year-old criminal. Again, this is not arguable. It's scientifically proven that due to Nisan's age, his brain's not as developed as an adult. He can't understand the consequences of his action as well as an adult. He has less impulse control, and importantly, he's more capable of rehabilitation. So if you someone of Nisan's age and compare him to a 35-year-old with a similar background, he's necessarily better or less culpable due to his age. And again, it's not just his age, it's the other factors that specifically apply to his situation and should have mitigated his sentence. Well, let me ask you another question. Based on his track record with probation and what what what gives what gives us any hope that this fellow will can be rehabilitated? Well, I did discuss in the PSI that he had been seeking therapy to participating in therapy while he was in juvenile detention. And I would say that the good progress that he was receiving in therapy is promising in terms of rehabilitative potential. Also, the fact that as a child, again, he is more capable of rehabilitation than if he were an adult offender. And I also would note that even the minimum sentence here is six years, which is significant. Still wouldn't let me be released from prison until 2023 at the earliest. Wasn't he on probation when he committed this offense? Yes, sir, he was. In some, this statute requires that the sentencing judge consider the intersection between youth and the attendant characteristics that make a child defendant less culpable. The court did not follow the new sentencing statutes mandate here. The lack of consideration for mitigating factors resulted in a 25 year sentence, again, 19 years above the statute for a minimum. Nissan Blake's committed this crime when he was 16 years old. He entered the Illinois Department of Corrections adult prison at age 17. And he will not be released until age 38 at the earliest. This sentence is excessive and we ask that it be reduced or the case remanded for a new sentencing hearing. Thank you. Thank you. Are there questions? I have an apology to make. I had a little internet problem apparently. Only got on the Zoom here about five minutes ago. But Ms. Sloan, I will be listening to the remainder of your time. Nice to see you, Tom. Nice to be here. Mr. Genetovic. Thank you, Your Honor. May it please the court, counsel. Gary Genetovic from the State's Attorney's Bill of Prosecutor's Office here on behalf of the people of the state of Illinois. Defendant was 16 at the time that he committed the acts that formulated the charge of aggravated battery with a firearm that resulted in personal injury, great bodily harm, to which he entered an open plea, sentenced to 25 years in the Department of Corrections. Defendant has argued that the sentence is excessive and the sentencing provisions have been modified to now require additional considerations. However, the overall sentencing procedure has not changed. The trial judge in this case is required to consider all the aggravating factors in aggravation and mitigation under the sentencing statute as the defendant was transferred and tried an adult cart, as well as the additional factors based on Miller v. Alabama and its progeny. The thing is, and what I'd first of all like to take and point out is, and kind of focus on the first part of the argument where a counsel has argued that the trial judge failed to consider the factors and that somehow the 25-year sentence conflicts fundamentally with the legislative trend. What we have to keep in mind is the trend here, yes, indeed, is to take and provide additional mitigating circumstances to be considered when sentencing a juvenile. However, that does not insulate the juvenile from the full impact of this conduct or the full impact of the sentencing provisions. And I say that based, first of all, on Miller, because a part of Miller at 567 U.S. at around 480, the court said, after indicating that juveniles should be treated differently, said that although we do not foreclose a sentencer's ability to make that judgment in homicide cases, which is basically impacting his or her sentence, we require to take into account how children are different and how these differences counsel against irrevocably sentencing them to a lifetime in prison. Now that's after they had basically commented that basically they want to take and they want to have additional considerations made for sentencing juveniles. And so based on that and based upon what Miller provided, the Ohio legislature amended the statute and basically what they did is they required further consideration of certain factors and age of 18. But what is interesting though with respect to the statute is although they put in there the mitigating factors, in subparagraph B of section 5-4.05-105, it says that except as provided in subsection C, the court may sentence the defendant to any disposition authorized for the class of the offense of which he or she was found guilty as described in article 4.5 of this statute. While the trend might be to take and provide additional considerations, the full panoply of sentencing options is available to the trial judge and the trial judge can impose any sentence. The trial judge in this case could very well have imposed the maximum sentence had he so desired. So the balance that has been played here in the brief that they are necessarily entitled to a lesser degree sentence than what is provided by law. What it does account for is that they are to be sentenced differently in that additional considerations that do not apply to an adult are being made applicable to a juvenile and are to be considered by a sentencing judge when imposing sentence. In this case, the trial judge did that. The trial judge, well, if you look at all the sentencing factors, if you look at the crime, if you look at the statement by the prosecutor in support of the guilty plea, the factual basis, if you look at the PSI, if you look at the juvenile's record, by the time he was 16, he had already amassed four class one felonies, a few residential burglaries, on probation at the time he committed the instant crime. If you take a look at, and the trial judge, I'm going to get to this in just a moment, the trial judge did review and consider, for example, the part of the PSI that talks about the school records, recognizing that they're not criminal, nonetheless, recognizing and looking at the ability with respect to dealing with the potential for rehabilitation. And in viewing that and in viewing the circumstances of the offense, the trial judge also commented and also did note that the juvenile had been respectful. And the trial judge wondered, basically, where was all this respect? Where has this been? He saw, at one point, he saw a different juvenile than what had been presented in the PSI. But yet, he linked that to the fact that a lot of the time that the juvenile was cooperative, was able to take and make sound decisions based on his age, he was in custody, or he was somehow in confinement. That is evident, because when he was being treated at the Kemperer home, he made strides. That was recognized. The problem is, when he was released, he was suggested he'd take and go and have outpatient treatment was suggested to go someplace, he never followed up. Rather than do that, he went back to the streets, went back to do what he wanted to take and do. So in looking at all of the factors and looking at all of the aggravation, as well as the mitigation, the trial judge decided to impose the sentence of 25 years. Now, when counsel talks about the fact that the trial judge didn't consider this or didn't consider that or gave improper or didn't give enough consideration to or gave just lip service to at our 110 to 112 of the record, we're talking about the hearing on the motion to be considered the trial judge, and a specified a few things that I'd like to take a highlight. He basically talked about that after reviewing the sentencing transcript, okay, matters with respect to the juvenile matters that must be taken to account those additional factors and mitigation to determine an appropriate sentence. He said they don't have to be all specifically mentioned and addressed in detail, but reference was clearly made to them. First, he noted the example of the school records. He tied the school records to rehabilitation, and he specifically addressed the transcript as well as the defendant's youth, the fact that his youth was not overlooked. He did consider it. He did look at it. Granted, he may have looked at the aspect of the PSI and the school records that were more of an aggravation mitigation, but yet it was still taken into consideration with respect to the fact that he was young. He was in school, but how does that reflect on what he's going to do outside, outside of a confined environment? Mr. Ganetovic? Yes. The statute says that these factors are supposed to be viewed in mitigation. Correct. It looked to me on reading the transcripts as though there were certain things that are supposed to be used in mitigation that the trial court actually used as factors in aggravation at the urging of the state. One was the behavior of his father in the courtroom. The other was his background, that the statute and Miller v. Alabama seem to suggest should be viewed as mitigating factors, that he had all of these bad examples, bad role models, and that if those people were removed from his life, he's still malleable. He's suggestible. He can take good suggestion as effectively as he can take bad suggestion. Although the trial court looked at those factors, it appears that he looked at them as factors in aggravation rather than in mitigation. With respect to your Honor's statement concerning family, I do remember specifically that defendant, I believe in the PSI, referred to his father as a role model. Right. So, we take that statement and we look at the father's conduct. To take and say, I guess it's difficult for me to take and chastise the prosecutor for pointing to the father and saying, well, this is his role model. This is how he's acting in society in conformity with what his father is. And if he's seen as the role model, that hasn't changed, even with whatever small rehabilitation has been made. And then if you look at the efforts that have been made, I believe as the trial judge kind of pointed out, juvenile court is different than adult court. Juvenile court is made to take and help. It's made to take and remediate. It's there and helped to rehabilitate. And you look at the efforts that were made there and the fact that time after time, probation was violated, new class one felonies were committed, residential burglars and crimes. Basically, it's as if the defendant just didn't care. And so, that has to be balanced. That has to be balanced in the same environment. He still had the same father. He had the same mother. That's right. And his mother, I think he claimed that his mother was his best friend, even though according to PSI, she had abused him. And even though for the most part, she was out of his life, still his best friend. And I understand the relationship between son and mother. And I'm not degrading that. I'm not in any way saying anything adverse about that. It's just that when you look at the totality of what goes on, it's the balance that was made. And simply because the trial judge balanced it differently doesn't mean that they weren't mitigating factors that were not considered. And that's the whole reason why the standard here of review, at least in this issue on this section, is an abuse of discretion. And that has to be evident. That has to be evident that either he didn't consider them or somehow in considering them, he somehow abuses discretion. And so, in coming up with a term of 25 years, figuring that going to give more than ample time, obviously, for the defendant to be in that confined environment, to which draws out the best independent to help to rehabilitate. And so, like I said, in hearing, but in his comments at the hearing on the motion to reconsider, basically, he once again indicated that the potential for rehabilitation was considered and that he didn't impose the defendant's youth, which might very well be a signal to trial judge in any other situation or circumstance under the facts of how this individual was shot at his home because of a $6,000 bounty on him, would have probably an adult charges would have been about probably the maximum sentence, if not more. So, under the circumstances in this case, the people maintain that under the appropriate abuse of discretion standard here, that the record does not support the defendant's argument that the trial judge did not abuse his discretion in setting the sentence. He made the considerations, he factored everything in that he was supposed to, he arrived at this decision and the people maintain that this decision should be sustained. If there are any other questions, I'll be more than happy to respond. Are there any questions? No. Thank you, Your Honor. Thank you, Mr. Genetovic. Ms. Sloan, any rebuttal? Yes, I just have a couple of points. Thank you. I just want to emphasize again, in response to counsel's argument that the trial court appropriately weighed the mitigating factors, this sentencing judge said on the record that none or almost none of the mitigating factors applied. I talked at length in my opening argument about the factors that applied for the youth sentencing statute. I also want to point out that we recognize that the factors, additionally, the old factors, the adult factors are applicable as well. Nisan Blake's also has many of the adult sentencing mitigation factors relevant. Some of these are number one, that the conduct was facilitated by someone other than the defendant. Yes, this is a gay-motivated crime. Another is mental illness. I discussed he has oppositional defiant disorder and ADHD. Another one is whether the defendant is a victim of domestic violence. Under the domestic violence statute, that can be apparent to child violence. As we know from the PSI, he is. Another one of the adult sentencing factors that is mitigating is his elocution, where he did take responsibility for his actions. Also, as Justice McDade pointed out, the sentencing court did use mitigating evidence as an aggravating factor. This was apparent through the discussion of the father and the discussion of the crime being gay-motivated. And again, yes, this was at the state's urging. The state didn't simply state that his dad being his role model should be considered. The state actually stated, and that's pretty scary, showing that he was specifically urging the sentencing court to use it as aggravating evidence when really, under the statute, it's mitigating. And again, the case that I discussed in opening, People v. McKinley, directly parallels this situation. In that case, the appellate court held that the trial judge inappropriately found that the gay motivation for the crime was aggravating evidence, when again, gay motivation is evidence of peer pressure, and that's mitigating evidence. Also, just briefly, the standard of review here is de novo, because it's a matter of the judge's correct application of the sentencing statute. It's similar to something like when we're considering if a judge gives the proper 604D admonishments or complies with Rule 431B. But if your honors do find that it's abuse of discretion standard, we would argue that the court did abuse his discretion here in imposing a 25-year sentence, which again, is 19 years above minimum. And finally, again, we would just ask that the Mr. Blake's sentence be reduced or the case remanded for a new sentencing hearing. Thank you. Are there any other questions? Okay. We thank you both for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision. The court will stand in brief recess now until 1.30.